Damian P. Richard, Esq. (SBN 1409067)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426
Tel: 619/758-1891
Fax: 619/296-2013
drichard@sessions-law.biz

Attorney for Diversified Consultants, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| JUSTIN RICHARD GILMORE,<br><br>　　　　Plaintiff,<br>　vs.<br><br>DIVERSIFIED CONSULTANTS, INC.,<br><br>　　　　Defendant. | Case No.: 14-cv-00243-TMB<br><br>NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>FRCP 12(b)(6) & 12(b)(7) |

TO ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE that defendant DIVERSIFIED CONSULTANTS, INC. ("DCI") hereby moves this Court, pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, for an Order dismissing the entire First Amended Complaint ("FAC") of plaintiff JUSTIN RICHARD GILMORE ("Plaintiff"), and each cause of action alleged therein, on the grounds that: (1) the alleged causes of action fail to state a claim upon which relief may be granted against DCI, (2) for impermissible claims splitting, and (3) for failure to join an indispensable party.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete records and file herein, the complete record and file in the related case, *Gilmore v. DCI,* Case No. 14-cv-00202-TMB (Oct. 21, 2014), and all other court records subject to judicial notice and upon such evidence and arguments that may be presented before the time of the Court's ruling on the motion.

Dated: January 12, 2015            SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.

                                    */s/ Damian P. Richard*
                                    Damian P. Richard
                                    Attorneys for Diversified Consultants, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is identical to a case already pending before this Court, *Gilmore v. DCI,* Case No. 14-cv-00202-TMB (Oct. 21, 2014) ("*Gilmore I*"), in which motions to dismiss and strike are currently pending before the Court. *Id.* at [Dkt. 4.] A motion to consolidate this instant case is also currently pending before the Court. [Dkt. 4.]

> *[A] court may, in its discretion, defer or abate proceedings where another suit, involving the identical issues, is pending either in federal or state court, and it would be duplicative, uneconomical and vexatious to proceed."*[1]

The operative complaint in *Gilmore I* alleges the same claims, against the same defendant, alleging the same type of calls. Therefore, this case should be dismissed, with prejudice, as duplicative, uneconomical, and vexatious.

The FAC in this case should be dismissed, with prejudice, because (1) Plaintiff fails to state a cause of action upon which relief may be granted, (2) Plaintiff's attempt to maintain two identical lawsuits constitutes impermissible claims splitting, and (3) Plaintiff lacks standing as he is not the subscriber of the cellular phone called. (FAC ¶ 17.)

Until recently, Plaintiff lived in San Diego County, California, where he voluntarily entered into a Value Unlimited Talk and Text service contract with T-Mobile. Plaintiff recently skipped-town without paying his just debt—the $584.53 unpaid balance remaining on the account. T-Mobile placed the account with DCI for collection.

---

[1] *Blinder, Robinson & Co., Inc. v. U. S. S. E. C.,* 692 F.2d 102, 106 (10th Cir. 1982) (citing *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655 (1978); *Brillhart v. Excess Insurance Co. of America,* 316 U.S. 491 (1942); *State Farm Mutual Automobile Insurance Co. v. Scholes,* 601 F.2d 1151 (10th Cir. 1979); *Aetna State Bank v. Altheimer,* 430 F.2d 750 (7th Cir. 1970); *and Klein v. Walston & Co.,* 432 F.2d 936 (2d Cir. 1970)).

Based on only a few alleged phone calls from DCI, Plaintiff now attempts to fashion three causes of actions for alleged violations of the following statutes: the Telephone Consumer Protection Act ("TCPA), 47 U.S.C. §§ 227, et seq.; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and the Alaska Consumer Protection Act ("ACPA"), AS 45.50.475a(3) [sic].

Plaintiff is wrong. First, Plaintiff fails to plead how DCI violated these statutes. Plaintiff's allegations are conculsory, and simply recite the statutory language without providing any facts upon which to base relief. Second, DCI had the *prior express consent* to call Plaintiff, all calls were made manually, and Plaintiff fails to allege he is the subscriber of the number called. As such, Plaintiff cannot establish these essential elements to a viable TCPA claim.

Plaintiff also failed to join the subscriber to the cellular phone, who is an indispensable party.

Even when accepting his allegations as true, Plaintiff fails to allege sufficient facts to state a claim upon which relief can be granted. Because Plaintiff fails to state a claim upon which relief may be granted, all three counts warrant dismissal.

## II. LAW AND ARGUMENT

### A. APPLICABLE STANDARD OF REVIEW

Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) require a pleading to contain a short and plain statement of the claim showing the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under the *Twombly* standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, (2009) quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a complaint does not require detailed factual allegations, the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The *Twombly* Court explained the purpose of Rule 8(a)(2) is to "give the defendant fair notice of the claim and the grounds upon which it rests." *Id.* When the allegations in a complaint fail to sufficiently state a claim showing that the plaintiff is entitled to relief, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558. While a pro se complaint is entitled to a liberal construction, "even a pro se complaint must contain enough factual allegations to state a claim to relief that is plausible, not merely speculative." *Campbell v. Commercial Equip., Inc.*, 5:10-CV-00313-WW, 2011 WL 3925068 (E.D.N.C. Sept. 7, 2011).

"Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss," *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir.2001), and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. IMPERMISSIBLE CLAIMS SPLITTING

> Federal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules. . . . [One] group of pretrial motions is closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration; the authority to hear these motions lies in the inherent power of a court to regulate actions pending before it. In this category fall motions to . . . dismiss because another action is pending.

*Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368 (9th Cir. 1988) (per curiam) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1360 at 633–34 (1969)).

Because another action involving the same parties and the same facts is already pending, *see Gilmore I*, this case should be dismissed. Allowing the two duplicative actions to proceed is a waste of the Court's resources, unnecessarily drives up the costs of both cases as duplicative discovery would presumably be required, and would unfairly burden DCI with having to defend the same case twice.

The doctrine of claim-splitting is the notion that a party is "not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit . . . . There would be no end to litigation if such a practice were permissible." *United States v. Haytian Republic,* 154 U.S. 118, 125 (1894) (quoting *Stark v. Starr,* 94 U.S. 477, 482 (1876)). The ultimate objective of this rule against claim-splitting is to "protect the Defendant from being harassed by repetitive actions based on the same claim" and to promote judicial economy and convenience. *Clements v. Airport Auth. of Washoe County,* 69 F.3d 321, 328 (9th Cir. 1995); Restatement (Second) of Judgments § 24.

While some courts have referred to claim-splitting doctrine as an "aspect" or "facet" of claim-preclusion doctrine, *Single Chip Sys. v. Intermec IP Corp.,* 495 F.Supp.2d 1052, 1058 (S.D. Cal. 2007), the primary difference is that, in claim-splitting, a litigant is able to move for dismissal without demonstrating that "a court of competent jurisdiction has entered a final judgment on the merits" in the first action. *Comm'r v. Sunnen,* 333 U.S. 591, 597 (1948); *Katz v. Gerardi,* 655

Notice of Motion, Motion to Dismiss, Memorandum of Points and Authorities in Support

6

Case 3:14-cv-00243-TMB   Document 8   Filed 01/12/15   Page 6 of 14

F.3d 1212, 1218 (10th Cir. 2011); *see also Single Chip*, 495 F.Supp.2d at 1059. "[A] motion to dismiss based on improper claim-splitting need not—indeed, often cannot—wait until the first suit reaches final judgment." *Adams v. California Dep't of Health Servs.,* 487 F.3d 684, 689 (9th Cir. 2006) (citing *Hartsel Springs Ranch v. Bluegreen Corp.,* 296 F.3d 982, 987 n.1 (10th Cir. 2002)).

Aside from this distinction, the process for determining whether a suit is duplicative "borrow[s] from the test for claim preclusion." *Adams v. California Dep't of Health Servs.,* 487 F.3d 684, 688–89 (9th Cir. 2006) (quoting *Hartsel Springs Ranch v. Bluegreen Corp.,* 296 F.3d 982, 987, n. 1 (10th Cir. 2002)). Claim preclusion bars "not only all claims that were actually litigated, but also all claims that *'could have been asserted'* in the prior action." *Int'l Union of Operating Engineers–Employers Const. Indus. Pension, Welfare & Training Trust Funds v. Karr,* 994 F.2d 1426, 1430 (9th Cir.1993) (quoting *McClain v. Apodaca,* 793 F.2d 1031, 1033 (9th Cir.1986)) (emphasis added).

The facts alleged in *Gilmore I* and here are identical. It is without question that Plaintiff could have asserted his claims in *Gilmore I. See Karr,* 994 F.2d at 1430. Therefore, this case constitutes impermissible claim-splitting and should be dismissed with prejudice.

### C. THIS CASE SHOULD BE DISMISSED UNDER 12(B)(7) FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

Plaintiff lacks standing under the TCPA. When it comes to the application of the TCPA to cell phones, courts within this Circuit have held, "the TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for calls made to that number." *Guttierez v. Barclays Group,* 2011 WL 579238, *5 (S.D. Cal. Feb. 9, 2011). Here, Plaintiff concedes that it is his

Notice of Motion, Motion to Dismiss, Memorandum of Points and Authorities in Support

7

Case 3:14-cv-00243-TMB   Document 8   Filed 01/12/15   Page 7 of 14

wife's cell phone, (FAC ¶ 17), that his wife's name appears on the cell phone bill, and therefore only his wife has standing to sue for alleged violations of the TCPA.

As admitted at paragraph 17 of the First Amended Complaint, Plaintiff's wife is the only proper party and indeed an indispensable party to this case. She is the subscriber to the cellular phone number and is the only party who can assert the TCPA violations. This Court could not properly grant relief in her absence. *See* FRCP 19(a)(1). Plaintiff's failure to join an indispensable party is a legal defense which can be raised by motion and warrants dismissal. Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed. 2013). This case should be dismissed.

### D. **PLAINTIFF FAILS TO STATE A TCPA CLAIM**

The Complaint impermissibly recites the statutory language of the TCPA and nothing more. *Twombly*, 550 U.S. at 555. Paragraphs 8 through 13 of the Complaint represent nothing more than a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by [a] mere conclusory statement[ ]" and should therefore be rejected. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949; *see also Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981) ("We do not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.").

Plaintiff alleges DCI violated the TCPA's "cell phone" provision, which, absent consent, "prohibits persons from (1) making 'any call,' (2) 'using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service . . . .'" *Grant v. Capital Management Services, L.P.,* 2011 WL 3874877, *1 (9th Cir. 2011) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)).

Plaintiff does not allege any facts, as opposed to legal conclusions, to establish the required elements of the TCPA, specifically that a call was placed using an ATDS or "artificial or prerecorded voice." All calls made by DCI were made manually, without the use of an ATDS, and Plaintiff fails to allege facts stating the contrary. Plaintiff also fails to allege any facts supporting a lack of *prior express consent*. Plaintiff's TCPA claim therefore fails as a matter of law.

The TCPA provides, in pertinent part:

> It shall be unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . .

47 U.S.C. § 227(b)(1)(A)(iii).

In shortest form, Plaintiff's claim fails because he does not allege any facts that would establish that an ATDS was used to call Plaintiff's cell phone.

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *47 U.S.C. § 227(a)(1)*. Plaintiff bears the burden of establishing that the calls to his cell phone were made with automated equipment that has the capacity to store or produce numbers to be called through the use of an automatic or sequential number generator. *See Dominguez v. Yahoo, Inc.,* 2014 WL 1096051, *4 (E.D. Pa. 2014) citing *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009). Here, Plaintiff fails to plead any such factual allegations. This failure is understandable, as Plaintiff here is incapable of demonstrating that DCI called his cell phone with an ATDS.

Notice of Motion, Motion to Dismiss, Memorandum of Points and Authorities in Support

9

Case 3:14-cv-00243-TMB   Document 8   Filed 01/12/15   Page 9 of 14

Plaintiff's inability to establish an essential element of the claim–namely, that the calls were placed through an ATDS, dooms his TCPA claim.

Further, Plaintiff fails to allege lack of *prior express consent* from the creditor. The Federal Communications Commission ("FCC") prescribes and implements regulations governing the TCPA's provisions concerning automated phone calls. *See* 47 U.S.C. § 229. The FCC has consistently found that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992). Subsequently, on January 4, 2008, the FCC adopted Declaratory Ruling 07–232, which further clarified its 1992 ruling:

> [A]utodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. . . . Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564 (F.C.C.2008) (emphasis added).

Thus, the FCC has determined that "prior express consent will be found whenever a person has provided his cell number to a creditor in connection with the transaction that resulted in the debt." *See Chavez v. Advantage Group,* 2013 WL 4011006, *2 (D. Colo. Aug. 5, 2013). The FCC noted, "[w]ith this ruling, . . . creditors and debt collectors may use predictive dialers to call wireless phones, provided the wireless phone number was provided by the subscriber in connection

Notice of Motion, Motion to Dismiss, Memorandum of Points and Authorities in Support

10

Case 3:14-cv-00243-TMB   Document 8   Filed 01/12/15   Page 10 of 14

with the existing debt." *See* 2008 FCC Ruling at 567, ¶ 14, 2008 WL 65485, *4; *see also Saunders v. NCO Financial Systems, Inc.,* 910 F.Supp.2d 464, 467 (E.D.N.Y. 2012) (stating "the authorities are almost unanimous that voluntarily furnishing a cell phone number to a vendor or other contractual counterparty constitutes express consent.") (citations omitted).

The Hobbs Act, 28 U.S.C. § 2342, requires that the FCC Rulings of 1992 and 2008 be applied by a District Court regarding how consent may be obtained to call a consumer's cell phone under the TCPA. *See Leckler v. Cashcall, Inc.,* 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) (vacating earlier decision after realizing the applicability of the Hobbs Act). In this case, the 1992 and 2008 FCC Rulings establish as a matter of law that Plaintiff granted prior express consent to DCI when he provided the cell number to the creditor. *See Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, *8 (M.D. Fla. 2013, Dec. 31, 2013) ("This Court agrees with the *Chavez* court and joins those courts that have found that the 2008 FCC Ruling is binding on the district courts and not subject to review except by the federal courts of appeals.")

Plaintiff fails to allege facts that DCI used an ATDS, nor does Plaintiff allege that DCI lacked *prior express consent* from the creditor. His TCPA claim fails.

### E. **PLAINTIFF FAILS TO STATE AN FDCPA CLAIM**

Plaintiff's FDCPA claims are without merit. Plaintiff fails to allege how DCI violated the FDCPA. (FAC ¶¶ 24-29.) In support of a claim for relief pursuant to FDCPA, a plaintiff must provide factual support as to why and how the statute was violated. "Plaintiff's mere reference to these federal statutes is insufficient to state a claim upon which relief can be granted—for each federal statute, Plaintiff must actually explain what allegations support a violation." *Sakugawa v. IndyMac Bank,* F.S.B. 2010 WL 4909574, *2 (D. Hawai'I Nov. 24, 2010).

Plaintiff alleges DCI "failed to send the Plaintiff a 30-day validation notice within five days of the initial communication." Section 1692g(a) requires a written notice of various disclosures within 5 days of the "initial communication" with the consumer. Here, Plaintiff fails to allege any "communication." Plaintiff alleges only 2 calls which appear on his cell phone. (FAC ¶ 26, Compl. Ex. 1.) Plaintiff fails to allege that he spoke with DCI at these times, or at which time, or that DCI left any messages or that he communicated with DCI in any way. Without any allegations as to an "initial communication," Plaintiff's allegations under § 1692(g) fail.

Plaintiff next tries to fashion a violation of § 1692b(3). However, § 1692b applies to "any person other than the consumer." Here, Plaintiff admits that he is the consumer. Thus, his § 1692b allegation fails as a matter of law.

Plaintiff's allegation that "the phone [rang] repeatedly," *after only two attempts*, is insufficient to state a claim under § 1692d(5). Section 1692d(5) makes it a violation for "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Two calls does not constitute "repeatedly or continuously," nor does Plaintiff allege any "intent to annoy, abuse, or harass any person" on the part of DCI. As such the § 1692(d)(5) claim fails.

Lastly, Plaintiff alleges DCI violated § 1692f, which states "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." But Plaintiff fails to allege any facts as to what "unfair or unconscionable means" were employed by DCI. DCI had permissible purpose under the FCRA to access Plaintiff's credit report – in connection with the debt he owes to T-Mobile. See 15 U.S.C. § 1682b(a)(3)(A).

Federal case law is clear – "a party is permitted to obtain an individual's credit information in connection with the collection of a debt." *Perretta v. Capital Acquisitions & Management Co.*, 2003 WL 21383757 at *5 (N.D. Cal. 2003) (The

collection letter sent "plainly states that defendant was attempting to collect a debt from plaintiff. Since it appears that if in fact defendant obtained plaintiff's consumer report it was in connection with an effort to collect a debt, plaintiff's [] claim fails."). *See also Huertas v. Galaxy Asset Management,* 641 F.3d 28, 34 (3d Cir. 2011) (Debt collector obtained the consumer's credit report from the credit reporting agency for an authorized purpose when the consumer sought credit from the creditor, which he received, and accumulated credit card debt, and it was this credit transaction which ultimately resulted in the debt collector's accessing of the consumer's credit report to collect on his delinquent accounts) and *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 118 (E.D. N.Y. 1999), *aff'd*, 234 F.3d 1261 (2d Cir. 2000) (A debt collector who accesses a credit report "in the collection of a credit transaction involving [p]laintiff" has a permissible purpose.)

In *Laugenour v. Northland Grp. Inc.,* 2013 WL 3745727, *2 (E.D. Cal. July 15, 2013) (holding "[o]ne [ ] permissible purpose allows a debt collector to obtain a credit report if the debt collector 'intends to use the information in connection with . . . review or collection of an account of the consumer.'"); *Makreas v. The Moore Law Group, A.P.C.,* 2011 WL 3047634 (N.D. Cal. July 25, 2011) (granting motion to dismiss and holding that "plaintiff's conclusory allegation that [the collector] lacked a permissible purpose is insufficient to state a claim [ ] particularly given plaintiff's allegation that defendant is 'engaged in the business of collecting debts.'"), *Pyle v. First Nat'l Collection Bureau,* 2012 WL 1413970 (E.D. Cal. Apr. 23, 2012) (granting motion to dismiss and holding that "[a] collection agency is permitted to obtain a consumer report if the agency is doing so for purposes of collecting a debt."); *Thomas v. Fin. Recovery Servs.,* 2013 WL 387968 (C.D. Cal. Jan. 31, 2013) (granting judgment on the pleadings and holding that "[c]ourts have been especially skeptical of claims brought against debt collection agencies which typically request credit reports for the permissible purpose of seeking the information in connection with the consumer's debt.").

Notice of Motion, Motion to Dismiss, Memorandum of Points and Authorities in Support

13

Case 3:14-cv-00243-TMB   Document 8   Filed 01/12/15   Page 13 of 14

Here, Plaintiff similarly admits that DCI is a "debt collection company." (FAC ¶ 4.) The credit inquiry was in relation to the Plaintiff's debt to T-Mobile. DCI had a permissible purpose to access Plaintiff's consumer report. Plaintiff's claims pursuant to section 1692f should be dismissed.

### III. PLAINTIFF FAILS TO STATE AN ACPA CLAIM

Plaintiff's ACPA claim is without merit. The claim fails because this statute applies to telemarketers, not debt collectors. Alaska Statutes section 45.50.475(a)(3) prohibits advertisers and solicitors from "engag[ing] in the telephone solicitation of a customer who has previously communicated to the telephone solicitor, or to the business enterprise or charitable organization for which the person is calling, the customer's desire not to receive telephone solicitations . . ." Here, Plaintiff admits that DCI is a debt collector, (FAC ¶ 4), not an advertiser, marketer, or solicitor. Further, Plaintiff fails to allege any communication where he "previously communicated . . . [his] desire not to receive telephone" communications from DCI. As such, the ACPA claim fails.

### IV. CONCLUSION

The FAC is duplicitous, constitutes impermissible claims-splitting, and should be dismissed. Plaintiff also lacks standing under the TCPA and fails to join an indispensable party—the subscriber to the cellular phone allegedly called. Even read in a light most favorable to the non-moving party, Plaintiff has failed to state a claim for relief pursuant to the TCPA, FDCPA, or the ACPA. For the foregoing reasons, DCI respectfully requests this Court grant its Motion to Dismiss the FAC, with prejudice.

Dated: January 8, 2014   SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.

　　　　　　　　　　　　　　　*/s/Damian P. Richard*
　　　　　　　　　　　　　　　Damian P. Richard
　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　Diversified Consultants, Inc.